UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MISTY MORGAN,

   Plaintiff

  v.           Case No.  1:12-cv-676-HJW

UNITED HEALTHCARE SERVICES, INC.,
and STARR MCFEE

   Defendants

## ORDER

  Pending is the defendants' "Motion to Compel Arbitration, and Stay or Dismiss Proceedings" (doc. no. 7). Plaintiff opposes the motion, and the defendants have replied. Having fully considered the record, including the pleadings and the parties' briefs, the Court will **grant** the motion to compel arbitration and **dismiss** the complaint, for the following reasons:

**I. Factual Allegations**

  In her complaint, Misty Morgan ("plaintiff") alleges that she was hired in March 2008 to work as medical benefits administrator at United Healthcare Services, Inc. ("UHS") at its office in Blue Ash, Ohio (doc. no. 1). She alleges that she and her children suffer from migraine headaches, but that she was not aware she could take FMLA leave (¶ 9).[1] On July 12, 2011, she learned she was pregnant (¶ 11). She suffered severe morning sickness, was hospitalized, and missed a

---

[1] In her complaint, plaintiff refers to the "FMLA" without citing to the actual statute. The acronym "FMLA" refers to the Family Medical Leave Act, 29 U.S.C. §§ 2611 et seq.

Page 1 of 11

week of work (¶ 19). On July 26, 2011, she left work 30 minutes early due to nausea (¶ 12). UHS assessed plaintiff a "point" under its written attendance policy (¶ 13).

In August of 2011, plaintiff requested intermittent FMLA leave. UHS granted her FMLA leave, and her certification was effective for the period July 29, 2011 through March 22, 2012 (¶ 17). Plaintiff complains that her FMLA leave should have been "effective July 26" so that she would not have received a point that day (¶ 18). When at work, plaintiff indicates she struggled to improve her production numbers (¶ 21). She continued to have nausea and was frequently away from desk or not on the phones because she went to the restroom to vomit 4-5 times a day (¶ 21). She alleges that her female supervisor ("McFee") criticized her for "being away from her desk too often" and "harassed" her about her production numbers (¶¶ 22-26).

On September 13, 2011, plaintiff took ½ day of work off for an ultrasound and learned she had miscarried (¶ 27). Instead of returning to work, she took the rest of the day off and had a second ultrasound, which confirmed her condition. Plaintiff had D & C surgical procedure the next day (¶ 28). Plaintiff was off work for two weeks. Due to ongoing problems, she had a second D & C surgery at the end of September 2011 (¶ 29). Her physician sent UHS a note indicating plaintiff needed leave until October 10, 2011 (¶ 30). She returned to work on that date, but indicates she cried uncontrollably "all day" (¶¶ 31-33). Several days later, plaintiff indicates that after crying in the restroom, plaintiff was reprimanded for not being at her desk manning the phones (¶ 34). On October 14, 2011, plaintiff called in and

informed her supervisor that she would not be working that day (¶ 36). Plaintiff did not return to the office until October 20, 2011 (¶¶ 37-38). Upon arriving, plaintiff met with McAfee and several other managers (¶ 39). McAfee advised plaintiff that her employment was being terminated because "her absence of Friday October 14, 2011 was her 7th occurrence" (¶ 40).

On August 2, 2012, plaintiff filed a three-count civil complaint in the Hamilton County Court of Common Pleas in Cincinnati, Ohio (doc. no. 1-1). In that complaint, she asserted claims against her former employer and supervisor for: 1) violation of the Family and Medical Leave Act; 2) pregnancy discrimination in violation of Ohio R.C. § 4112.02; and 3) intentional infliction of emotion distress under Ohio common law. Defendants removed this action to federal court on September 5, 2012, on the basis of "federal question" jurisdiction pursuant to 28 U.S.C. § 1331. Defendants then filed the present motion to compel arbitration, which plaintiff opposes. This matter is ripe for consideration.

## II. Standard of Review

The Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") provides that a party to an arbitration agreement, who is aggrieved by another party's refusal to submit an arbitrable dispute to arbitration, may petition any federal district court which would otherwise have jurisdiction over the underlying matter in order to compel arbitration. 9 U.S.C. § 4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that

agreement." Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." Raasch v. NCR Corp., 254 F.Supp.2d 847, 851 (S.D.Ohio 2003); Blakley v. UBS Financial Services Inc., 2013 WL 360378, *1 (S.D.Ohio 2013).

### III.  Discussion: Whether the Court Should Compel Arbitration

#### A. Relevant Law

Section 2 of the Federal Arbitration Act ("FAA") provides:

> [A] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ., 489 U.S. 468, 479 (1989). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." Deck v. Miami Jacobs Business College Co., 2013 WL 394875, *2 (S.D.Ohio 2013) (J. Black). Courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010); Great Earth Cos., Inc. v. Simons, 288 F.3d 878 (6th Cir. 2002).

When considering whether to compel arbitration under the FAA, a court will consider: (1) whether the parties agreed to arbitrate; and (2) the scope of the arbitration agreement. Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000), cert. denied, 531 U.S. 1148 (2001). Additionally, if any federal statutory claims are asserted, the court will consider (3) whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. Id.; see also, Deck, 2013 WL 394875 at *2; Stepp v. NCR Corp., 494 F.Supp.2d 826, 828 (S.D.Ohio 2007).

**B. Analysis**

**1. Whether the parties agreed to arbitrate**

Defendants point out that the plaintiff expressly agreed in writing to resolve all covered employment disputes through final and binding arbitration with the American Arbitration Association, rather than by jury trial. In support, the defendants attach several exhibits to their motion, including the declaration of United Health Group HR Director Deveri Ray, the letter of February 20, 2008 offering plaintiff a job (subject to accepting the company's attached written Arbitration Policy as a condition of employment), a copy of the Arbitration Policy, and a copy of the plaintiff's electronic acceptance dated March 17, 2008 (indicating "I have read and agree to the above").

Plaintiff acknowledges that she received the employment offer letter on or about February 20, 2008. Such letter discussed the enclosed Arbitration Policy (doc. no. 7, Ex. A, Offer Letter and Arbitration Policy). On its face, UHS's letter

expressly advised that agreement to the Arbitration Policy was a condition of employment. Plaintiff accepted the offer on March 17, 2008, signed it electronically, and thereby acknowledged the Arbitration Policy. Electronic signatures are binding under Ohio law. See Ohio R.C. § 1306.06 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form . . . A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.").

In her affidavit, plaintiff acknowledges that she received the letter. She specifically recalls "agreeing to the salary and benefits," but inconsistently indicates she does not "believe" she submitted an electronic signature "that agreed to arbitration." Such conjecture is belied by the record and provides no basis to avoid arbitration. She could not have "accepted" the salary and benefits in the employment offer unless she also agreed to the Arbitration Policy as a condition of employment. To the extent plaintiff suggests she does not remember, this fails to create any issue as to whether the parties had a valid agreement to arbitrate.

Plaintiff offers no relevant argument to refute the legal arguments and authority cited by the defendants in their motion. Instead, plaintiff notes that her last name subsequently changed from Malsbary to Morgan and that UHS updated her name electronically. In an attempt to avoid arbitration, she suggests (with no citation to any relevant authority) that the arbitration agreement is not enforceable because her name was updated electronically. She speculates that "a Defendant capable of changing the electronic signature would also be capable of

manufacturing such a signature after the fact" (doc. no. 10-1 at ¶ 5). Such speculation provides no basis to invalidate the parties' express agreement to arbitrate. Affidavits must be based on personal knowledge, not speculation. Moreover, defendants point out that Ms. Ray explained in her affidavit that each employee was assigned a unique identification number that remained constant, regardless of any subsequent name changes (doc. no. 11 at 4-5). Ms. Ray indicates that "the date stamp reflected in the system and on the document itself establishes that Ms. Morgan executed the Employment Arbitration Policy on March 17, 2008, when her name was Misty Malsbury" (Ray Affidavit, ¶ 10).

Moreover, as plaintiff concedes, assent can be manifested through continued employment. See <u>Dantz v. Am. Apple Group, LLC</u>, 123 Fed. Appx. 702 (6th Cir. 2005) ("Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment."); <u>Porter v. MC Equities, LLC</u>, 2012 WL 3778973 (N.D. Ohio) ("an employee's continued employment with her employer alone is sufficient consideration for an arbitration agreement under Ohio law"). Even construing the facts and any reasonable inferences in the light most favorable to plaintiff, the evidence of record reflects that the parties agreed to arbitrate any covered employment-related claims.

### 2. Whether plaintiff's claims are within the scope of the Arbitration Policy

The Arbitration Policy expressly indicates that covered claims include FMLA claims, state anti-discrimination claims, and tort claims. No ambiguity exists here. "Where no ambiguity exists in an agreement to arbitrate, the

language of the contract defines the scope of disputes subject to arbitration." Brinkerhoff, 2005 WL 1661693, *5 (citing E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002)). Whether an arbitration agreement requires arbitration of a particular dispute is a matter of contract interpretation. Id. (citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 242 (1962)). Under the express terms of the Arbitration Policy, all of the plaintiff's claims in this action are within the scope of the parties' agreement. "If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms." Simon v. Pfizer, Inc., 398 F.3d 765, 773 n. 12 (6th Cir. 2005). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, (1983). Plaintiffs' claims are all subject to arbitration under the express terms of the Arbitration Policy.

**3. Whether Congress intended the federal statutory claim to be nonarbitrable**

Plaintiff alleges a federal statutory claim under the FMLA. The Arbitration Policy, which plaintiff agreed to as a condition of her employment, specifically indicates that FMLA claims are subject to arbitration. The United States Supreme Court has held that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

Employment-related statutory claims, such as FMLA claims, may be validly subject to an arbitration agreement enforceable under the FAA. Gilmer, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); Brinkerhoff v. Zachry Construction Corp., 2005 WL 1661693, *5-6 (S.D. Ohio) (dismissing plaintiff's FMLA claims because they were subject to arbitration); O'Hara v. Mt. Vernon Bd. of Educ., 16 F.Supp 2d 868, 881 (S.D.Ohio 1998) (FMLA claims may properly be referred to arbitration under an express agreement). Plaintiff has not shown that Congress intended FMLA claims to be nonarbitrable. Gilmer, 500 U.S. at 26 (observing that the burden is on plaintiff "to show that Congress intended to preclude a waiver of a judicial forum"). "[T]here is no provision in the FMLA suggesting that agreements to arbitrate are unenforceable nor is there legislative history to support that contention." Brinkerhoff, 2005 WL 1661693 at *6.

To the extent that the plaintiff also suggests (again, without any relevant citation to legal authority) that the defendants "waived" arbitration by removing this case to federal court, the defendants point out that the Sixth Circuit Court of Appeals has rejected this theory. See Dantz, 123 Fed. Appx. at 702 ("mere removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right to arbitration"); Reidy v. Cyberonics, Inc., 2007 WL 496679, *7 fn.4 (S.D.Ohio) ("removal alone is not sufficient to constitute waiver" and distinguishing cases involving "substantially higher levels of participation"); Siam Feather & Forest Products Co., Inc. v. Midwest Feather Co., Inc., 503 F.Supp. 239, 243 (S.D.Ohio 1980) ("[A] party may file an answer . . . without waiving its

right to arbitration"). In the present case, the defendants have promptly sought to enforce arbitration.

### 4. Whether to Stay or Dismiss

Where claims are referred to arbitration, the FAA provides for a stay of the court proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In cases, such as the present one, where *all* the claims are subject to final and binding arbitration, courts may properly dismiss the complaint. See Arnold v. Arnold Corp., 920 F.2d 1269, 1275 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); Hensel v. Cargill, Inc., 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) ("litigation in which all claims are referred to arbitration may be dismissed"); Ozormoor, 354 Fed.Appx. at 974-75 (affirming the district court's order compelling arbitration and dismissing the complaint); Stachurski, 642 F.Supp.2d at 774 (having "determined that all of Plaintiffs' claims against Defendant are referable to binding arbitration, . . . dismissal [of the case] is appropriate").

"The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) (quoting Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)). "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." Gilchrist v. Inpatient Medical Services, Inc., 2010 WL 3326742, *5 (N.D.Ohio) (quoting Nestle Waters N. Am., Inc.

**v. Bollman**, 2006 WL 3690804, at *6 (W.D.Mich. 2006), affirmed, 505 F.3d 498 (6th Cir. 2007)). Given that all of the plaintiffs' claims are subject to binding arbitration, the Court will dismiss, rather than stay, this case.

**IV. Oral Argument Not Warranted**

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The Court finds that the pleadings and exhibits are clear on their face, and that oral argument is not warranted. **Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs**, 975 F.2d 300, 301-02 (6th Cir. 1992); **Schentur v. United States**, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendant's "Motion to Compel Arbitration" (doc. no. 7) is **GRANTED**; this case is **DISMISSED** without prejudice.

IT IS SO ORDERED.

s/Herman J. Weber

**Herman J. Weber, Senior Judge**

**United States District Court**